O
JS-6

# United States District Court
# Central District of California

MARCIA POWELL,

         Plaintiff,

   v.

USI INSURANCE SERVICES, LLC et al.,

         Defendants.

Case № 2:23-cv-04129-ODW (BFMx)

**ORDER REMANDING CASE**

## I.  INTRODUCTION

On April 19, 2023, Plaintiff Marcia Powell filed this action in Los Angeles County Superior Court.  (Notice of Removal ("NOR") ¶ 1, ECF No. 1.)  On May 26, 2023, Defendant USI Insurance Services, LLC ("USI") removed the case on the basis that the Court has jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  (*Id.* ¶¶ 5–7.)

On July 21, 2023, the Court ordered USI to show cause why this action should not be dismissed for lack of subject matter jurisdiction.  (Order Show Cause, ECF No. 9.)  Specifically, the Court posed "a two-pronged inquiry into the facial <u>and</u> factual sufficiency of Defendant's demonstration of subject matter jurisdiction, which the Court now calls on Defendant to make."  (*Id.* at 2 (emphasis in original) (*citing*

*Leite v. Crane Co.*, 749 F.3d 1117, 1121–22 (9th Cir. 2014).)  Having considered the parties' responses, (Opp'n, ECF No. 10; Reply, ECF No. 11), the Court finds that it lacks subject matter jurisdiction and **REMANDS** this matter to Los Angeles County Superior County.

## II.     LEGAL STANDARD

Federal courts have subject matter jurisdiction only as authorized by the Constitution and Congress, U.S. Const. art. III, § 2, cl. 1; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), and have an independent obligation to determine whether subject matter jurisdiction exists, even when no party challenges it, *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010).  *See* 28 U.S.C. § 1447 ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

CAFA vests original jurisdiction in district courts to hear civil actions "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A); *Adams v. W. Marine Prods., Inc.*, 958 F.3d 1216, 1220 (9th Cir. 2020).  CAFA jurisdiction only exists over actions where the number of proposed class members is greater than 100. 28 U.S.C. § 1332(d)(5)(B).

Generally, a notice of removal filed in federal court must contain only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).   But where a plaintiff contests, or the court questions, a defendant's allegations concerning the amount in controversy, both sides submit proof, and the court decides whether the defendant has proven the amount in controversy by a preponderance of the evidence.  *Id.* at 88–89.

These procedures apply to the amount in controversy requirement in CAFA cases to the same extent they apply to ordinary diversity cases.  As the Ninth Circuit has explained:

> When plaintiffs . . . have prepared a complaint that does not assert the amount in controversy, or that affirmatively states that the amount in controversy does not exceed $5 million, if a defendant wants to pursue a federal forum under CAFA, that defendant in a jurisdictional dispute has the burden to put forward evidence showing that the amount in controversy exceeds $5 million . . . and to persuade the court that the estimate of damages in controversy is a reasonable one.

*Ibarra v. Manheim Invs.*, 775 F.3d 1193, 1197 (9th Cir. 2015).  "Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the . . . theory of damages exposure."  *Id.* at 1198.  "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions."  *Id.* at 1197.

"[W]hen the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof [as to CAFA's amount-in-controversy requirement], the chain of reasoning and its underlying assumptions must be reasonable."  *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015).

## III.      DISCUSSION

The parties do not dispute the minimum diversity or numerosity elements of CAFA.  Accordingly, the only issue is whether the amount in controversy exceeds the $5,000,000 jurisdictional threshold.

In its Opposition, USI calculates an amount in controversy of $10,575,888.94.  (*See* Opp'n 17.)  In support of its calculation, USI relies on the declarations of Lauren Dann, USI's Corporate Human Resources Information System Manager, and Kaitlin Miller, a director of an economic and statistical analyses consulting firm.  (Decl. of Lauren Dann ISO Opp'n ("Dann Decl."), ECF No. 10-2; Decl. of Kaitlin Miller ISO

Opp'n ("Miller Decl."), ECF No. 10-1.)  Dann states that she created timekeeping and payroll reports for all persons who have worked in hourly paid, non-exempt positions for USI in California between April 19, 2019, and May 6, 2023.  (Dann Decl. ¶¶ 5–7.) Miller then relied on Dann's reports to calculate the number of putative class members, the number of workweeks, the number of various shift lengths, putative class members' average hourly wage, and the number of former putative class members.  (Miller Decl. ¶ 7.)  USI provides the Court with no additional evidence to support its assumptions or calculations.

To determine whether an action meets CAFA's amount-in-controversy threshold, "courts first look to the complaint."  *Ibarra*, 775 F.3d at 1197.   Here, Plaintiff alleges class action claims for (1) failure to pay minimum wage; (2) failure to pay overtime compensation, (3) failure to provide meal periods; (4) failure to authorize and permit rest breaks; (5) failure to indemnify necessary business expenses; (6) failure to timely pay final wages at termination; (7) failure to provide accurate itemized wage statements; and (8) unfair business practices based on these alleged violations.  (*See generally* NOR Ex. 1 ("Compl.") ¶¶ 32–80, ECF No. 1-1.)

**A.    Failure to Pay Minimum Wage**

For the alleged minimum wage violations, USI calculates an amount in controversy of $193,658.92.  (Opp'n 9–10.)  This amount is derived from Plaintiff's allegation that "Defendants maintained a policy and practice of not paying Plaintiff and the Class for all hours worked."  (Compl. ¶ 15.)  "Plaintiff and the Class were required [t]o perform work prior to clocking into work, and after clocking out for work, off the clock and uncompensated."  (*Id.*)

USI finds it "reasonable to assume Plaintiff alleges she worked five minutes prior to clocking in and five minutes after clocking out for 10 minutes each shift, for five shifts a week."  (Opp'n 9.)  USI calculates the average minimum wage in the State of California between January 1, 2020, and December 31, 2022, as $14.00 per hour.  (*Id.*)  Defendants apply a 100% violation rate to each of the 16,666 workweeks

worked by the putative class members during the relevant three-year statute of limitations period. (*Id.* at 10.)

In determining the reasonableness of an assumed violation rate, the Ninth Circuit distinguishes between complaints of "universal" violations and those alleging a "pattern and practice" of labor law violations. *LaCross*, 775 F.3d at 1202. Allegations of "a 'pattern and practice' of doing something does not necessarily mean *always* doing something" and do not render a 100% violation rate proper for the purposes of calculating amount in controversy. *Ibarra*, 775 F.3d at 1198–99 (emphasis in original). The removing party has the "burden to show that its estimated amount in controversy relied on reasonable assumptions." *Id.* If a court disagrees with the defendant's calculation "because a different, better assumption is identified," it does not assign the claim "a $0 value," but rather "should consider the claim under the better assumption." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 995–96 (9th Cir. 2022).

Here, Plaintiff alleges a "policy and practice" of labor law violations. (Compl. ¶ 15.) Many courts, including this Court, have found the conservative violation rate of 50% to be proper for such allegations. *See Marquez v. Toll Glob. Forwarding (USA) Inc.*, No. 2:18-cv-03054-ODW (ASx), 2018 WL 3046965, at *3 (C.D. Cal. June 19, 2018) (finding a 50% violation rate reasonable where plaintiff alleged that defendant forced class members to "often forego a meal period and/or work during their meal period"); *Oda v. Gucci Am., Inc.*, No. 2:14-cv-07469-SVW (JPRx), 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) (finding defendant's assumption of a 50% violation rate reasonable where plaintiff's complaint alleged that defendant maintained a policy and practice of labor violations); *see also Kincaid v. Educ. Credit Mgmt. Corp.*, No. 2:21-cv-00863-TLN (JDPx), 2022 WL 597158, at *4 (E.D. Cal. Feb. 28, 2022) (finding the assumed 20% violation rate to be reasonable). The Court finds USI's assumption that Plaintiff alleges she worked five minutes prior to clocking in and five minutes after clocking, as well as the calculation of average minimum wage during the relevant

1    period, to be reasonable. Therefore, applying a 50% violation rate to USI's

2    calculation yields an amount in controversy of **$97,218.33** (50 minutes x $14.00

3    average hourly rate x 16,666 workweeks x 50% violation rate).

4    **B.    Failure to Pay Overtime Compensation**

5          For Plaintiff's next claim for failure to pay overtime compensation, USI

6    calculates an amount in controversy of $1,036,682.41. USI does so by first

7    multiplying an average hourly overtime wage by the number of workweeks worked by

8    the putative class members. USI provides support for each of these numbers. USI

9    calculates the hourly overtime rate by multiplying the class members' average hourly

10   rate of $29.67, (Miller Decl. 5), by 1.5x. (Opp'n 11.) USI also provides support for

11   the 23,291 workweeks worked by the putative class members between April 19, 2019,

12   and May 6, 2023. (Miller Decl. 5.) However, USI then applies a 100% violation rate

13   to the assumption that at least one hour of overtime went unpaid every week during

14   each workweek worked by the putative class members. (Opp'n 11.) USI provides no

15   support for this universal assumption.

16         Rather, Plaintiff alleges that she and the class members "have worked more

17   than eight hours in a workday," and "Defendants failed to pay Plaintiff and the Class

18   overtime compensation for the hours they have worked in excess of the maximum

19   hours permissible by law." (Compl. ¶¶ 43–44.) Plaintiff does not allege that they

20   worked one hour of unpaid overtime every week, as Defendants assume in their

21   calculation.

22         As the Court found for the Plaintiff's alleged minimum wage violations, a

23   50% violation is reasonable to estimate the amount in controversy for the alleged

24   overtime violations. Applying this violation rate, the amount in controversy for

25   overtime violations is **$518,341.21** (23,291 workweeks x $44.51 hourly overtime rate

26   x 50% violation rate).

27

28

**C.     Failure to Provide Meal Periods and Rest Breaks**

For Plaintiff's allegations that Defendants failed to provide and pay for meal periods and rest breaks, USI calculates an amount in controversy of $6,189,755.40. (Opp'n 11–13.)   To reach this conclusion, USI relies on an assumption about the frequency with which class members did not receive compliant meal breaks and rest periods.  (*Id.*)  USI applies a 100% violation rate to the assumptions that one hour of premium pay was withheld for each of the 103,157 shifts exceeding five hours worked (i.e., meal periods) and one hour of premium pay was withheld for each of the 105,463 shifts exceeding 3.5 hours (i.e., rest breaks).  (*Id.* at 13.)  For the estimated number of shifts, USI provides reliable extrinsic evidence.  (Miller Decl. 5.)  USI also provides extrinsic support for the estimated average hourly salary of $29.67.  (*Id.*)  However, USI's assumed violation rate is not supported by the factual allegations in the Complaint, and USI fails to offer extrinsic evidence to support the 100% violation rate.

Rather, Plaintiff's allegations in her Complaint refute the use of a 100% violation rate.  Plaintiff alleges that Defendants "sometimes, but not always" violated meal period and rest break protections.  (Compl. ¶¶ 16–17.)  Furthermore, Plaintiff alleges that Defendants "maintained a policy and practice of not permitting Plaintiff and the Class to leave the premises during meal and rest periods," but not that this conduct was uniformly Defendants' practice.  (*Id.*)

Considering the Plaintiff's allegations, the Court finds a 60% violation rate for the meal period allegation and a 30% violation rate for the rest period allegation proper.  *See, e.g.*, *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (finding the same rates reasonable).  Without evidence to the contrary, these generous assumptions accept that the putative class members were not provided three of the five meal periods and three of ten rest periods to which they were entitled each work week. The resulting amount in controversy is $1,836,400.91 (103,157 shifts exceeding five hours x $29.67 average hourly rate x 60% violation rate) for meal breaks and

$938,726.16 (105,463 shifts exceeding 3.5 hours x $29.67 hourly rate x 30% violation rate) for rest periods, totaling **$2,775,127.07**.

**D.    Failure to Indemnify Necessary Business Expenses**

Plaintiff's further claim that Defendants failed to reimburse business expenses that related "to working from home, such as home internet costs, printer costs, personal computer costs, and office supplies." (Compl. ¶ 18.) Additionally, Plaintiff alleges she and the class "were required to use their own personal cellular telephones for work purposes, without full reimbursement." (*Id.*) USI, without factual support, assumes that each member of the class incurred $30.00 in home internet and personal cell phone expenses in each month for the entirety of the three-year statute of limitations period. (Opp'n 14.)

Without any factual support for USI's assumption, the Court finds the use of $30.00 per month to be highly speculative. However, Plaintiff fails to provide an alternative estimate. Therefore, the Court does not disturb the $30.00 estimate, but it does apply a reasonable 30% violation rate to calculate the amount in controversy. Using this assumption, the amount in controversy for the failure to indemnify necessary business expenses is **$91,044.00** ($30.00 of unreimbursed expenses x thirty-six-month relevant period x 281 employees x 30% violation rate).

**E.    Failure to Timely Pay Final Wages at Termination**

Next, Plaintiffs claim that "Defendants willfully failed and refused to timely pay Plaintiff and the Class at the conclusion of their employment all wages for all minimum wages, overtime wages, meal period premium wages, and rest period premium wages." (Compl. ¶ 19.) To quantify the amount in controversy for this allegation, USI again uses a 100% violation rate for the 81 former employees. (Opp'n 14.) Although USI provides extrinsic evidence for the number of former employees (81), the average hourly rate ($29.42), and the average shift length (8.04 hours), (Miller Decl. 5), it fails to support the use of a universal violation rate.

USI argues that it is reasonable to rely on the maximum waiting time penalties permitted by statute for all separated employees, using reasonable estimates. (*Id.* at 15); Cal. Lab. Code § 203(a). Although the Court finds that using the statutory maximum period of 30 days is reasonable, USI assumes that the 81 former employees worked all 30 days before their termination. *See Santos v. TWC Admin. LLC*, No. 13-cv-04799-MMM (CWx), 2014 WL 12703020, at *3 (C.D. Cal. May 27, 2014) (applying the 30-day statute of limitations period to calculate amount in controversy). The Court also finds it reasonable to assume that some, but not all, employees, received their wages at termination. The Court therefore applies a 50% violation rate, rather than the proposed 100% violation rate. This results in an amount in controversy of **$287,392.21** (81 employees x 30 days x 8.04 hours x $29.42 hourly rate x 50% violation rate).

## F.     Failure to Provide Accurate Itemized Wage Statements

Plaintiff's final claim is for Defendants' failure to furnish the putative class members "with accurate, itemized wage statements showing all applicable hourly rates, and all gross and net wages earned." (Compl. ¶ 20.) To quantify the amount in controversy for this allegation, Defendants assume a 100% violation rate for each of the 3,247 wage statements issued between April 19, 2022, and May 6, 2023. (Miller Decl. 5; Opp'n 16.)

Unlike Plaintiff's other claims, here, Plaintiff alleges uniform violations of California Labor Code section 226(a) by failing to furnish complete and accurate itemized wage statements. If a complaint alleges "uniform" practice, the defendant's amount in controversy calculus assumes a 100% violation rate, and no competent evidence in rebuttal to the defendant's evidence is shown, then "courts have found the defendant's assumption to be reasonable." *See Dobbs v. Wood Grp. PSN, Inc.*, 201 F. Supp. 3d 1184, 1188 (E.D. Cal. 2016).

Applying this 100% assumed violation rate, the amount in controversy for wage statement violations is **$162,350.00** (3,247 wage statements during the relevant

one-year statute of limitations period x $50 statutory penalty per non-compliant wage statement x 100% violation rate).

**G.    Attorneys' Fees**

Finally, Plaintiff seeks to recover attorneys' fees.  (Compl., Prayer for Relief ¶¶ 8, 13, 18, 23, 28, 33, 38, 43.)  "[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998).  But a removing defendant must "prove that the amount in controversy (including attorneys' fees) exceeds the jurisdictional threshold by a preponderance of the evidence," and must "make this showing with summary-judgment-type evidence."  *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 795 (9th Cir. 2018).

USI urges the Court to apply a benchmark of 25% of damages to calculate the amount of attorneys' fees in controversy.  (Opp'n 17.)  However, USI does not analogize the present case to any of the cases it cites, and it fails to show that the assumption of 25% of damages is reasonable.  Although the Ninth Circuit provides that the percentage method is one of the approaches a district court can employ to calculate attorneys' fees, it has rejected that attorneys' fees in class actions are 25 % of all other alleged recovery as a matter of law.  *Fritsch*, 899 F.3d at 796.

The Court finds USI's proposed percentage to be unreasonable, highly speculative, and without evidentiary support.  Here, attorneys' fees count towards the amount in controversy because they are recoverable pursuant to a fee-shifting statute, and, therefore, "it makes sense to estimate the attorneys' fee for amount-in-controversy purpose *in the same manner* that it would be calculated under the fee-shifting statute upon a noticed motion for fees at the close of litigation."  *Gurzenski v. Delta Air Lines*, No. 2:21-cv-05959-AB (JEMx), 2021 WL 5299240, at *5 (C.D. Cal. Nov. 12, 2021) (emphasis in original).  USI's proposed 25% benchmark is from a class action settlement context and is not a suitable proxy for estimating the amount

put in controversy in this action. *See id.* (finding the 25% benchmark unreasonable for the purposes of calculating amount in controversy under CAFA). Estimating the attorneys' fees by applying a 25% benchmark from the settlement context would overstate the fee award plausibly recoverable in this action (although the Court notes that even if it were to apply a 25% benchmark to the reasonable estimates calculated above, the amount in controversy would still fall short of CAFA's $5 million threshold).

Instead, the lodestar method provides a more reasonable approach to estimate the amount in controversy for the Plaintiff's attorneys' fee claim. The lodestar method involves "multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). USI presented no evidence of what a lodestar fee would be, and it has not provided the Court with an estimated number of hours or a reasonable hourly rate. USI has failed to satisfy its burden to include attorneys' fees in the amount-in-controversy calculation. *See Fritsch*, 888 F.3d at 795 ("A district court may reject the defendant's attempts to include future attorneys' fees in the amount in controversy if the defendant fails to satisfy this burden of proof.").

**H.    Total Amount in Controversy**

Aggregating each of the above, a reasonable estimate of the amount in controversy in this action is **$3,931,472.82**, falling short of CAFA's $5,000,000 threshold.

## IV.    CONCLUSION

Therefore, the Court **REMANDS** this matter to the Superior Court of California, County of Los Angeles, 111 N. Hill St., Los Angeles, CA, 90012, Case No. 23STCV08732.  All dates and deadlines are **VACATED**.  The Clerk of this Court shall close this case.


**IT IS SO ORDERED.**


September 25, 2023

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**